IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBORAH L. HARTER,<br>        Plaintiff, | )<br>)<br>) |
| vs | ) Civil Action No. 11-588 |
| | ) |
| COUNTY OF WASHINGTON,<br>WASHINGTON COUNTY JURY<br>SELECTION COMMISSION, JUDITH L.<br>FISHER, JURY COMMISSIONER,<br>WASHINGTON COUNTY COURT OF<br>COMMON PLEAS, CHRISTINE L.<br>WELLER, in her official capacity as Court<br>Administrator of the Washington County Court<br>of Common Pleas, and JUDGE DEBBIE<br>O'DELL SENECA, in her official capacity as<br>the President Judge of the Washington County<br>Court of Common Pleas,<br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

MEMORANDUM OPINION AND ORDER

MITCHELL, Magistrate Judge:

Presently before the Court are motions to dismiss the amended complaint filed by defendants Washington County Court of Common Pleas (the "Court of Common Pleas") and Christine L. Weller, in her official capacity as Court Administrator of the Court of Common Pleas. For reasons discussed below, the Court of Common Pleas' motion to dismiss (Document No. 20) will be granted, and Christine Weller's motion to dismiss (Document No. 27) will be granted as to Counts I and III and as to the plaintiff's claim for money damages in Count II, but denied as to the plaintiff's claim for prospective injunctive relief in Count II.[1]

---

[1] The plaintiff filed her amended complaint on July 25, 2011. Motions to dismiss the amended complaint were filed on behalf of the Court of Common Pleas and Christine Weller, and briefing on the motions to dismiss was completed by November 8, 2011. On November 7, 2011, the plaintiff filed a second amended complaint, which added Judge Debbie O'Dell Seneca, in her official capacity as the President Judge of the Court of Common Pleas, as

1

On July 25, 2011, the plaintiff, Deborah L. Harter, filed an amended complaint against defendants County of Washington (the "County"), its Jury Selection Commission, Judith L. Fisher, one of its Jury Commissioners, its Court of Common Pleas, and Christine L. Weller, in her official capacity as Court Administrator of the Court of Common Pleas. On November 7, 2011, the plaintiff filed a second amended complaint, which added Judge Debbie O'Dell Seneca, in her official capacity as the President Judge of the Court of Common Pleas, as a defendant.

The plaintiff complains that the County and/or the Court of Common Pleas unlawfully terminated her employment as a Jury Commission Assistant, and in conjunction with her discharge, the defendants violated Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.C.S.A. §§ 955, et seq.

The plaintiff contends that from May, 2000 until on or about November 5, 2008, she was employed on a full-time basis by the County and/or the Court of Common Pleas as a Jury Commission Assistant; that throughout her employment, she received exemplary reviews and was never subjected to any discipline; that on or about June 20, 2008, she was injured at work, which required her to schedule periodic medical treatment, and she made a claim for workers' compensation related to her injury; that one of her supervisors, Jury Commissioner Judith L. Fisher, disapproved of her having to miss work to undergo medical treatment, and in July, 2008, Fisher began harassing her on an almost daily basis by threatening to discharge her; that Fisher perceived the plaintiff to be disabled due to her having to schedule time off from work for health reasons; and that on or about September 16, 2008, Fisher forbade her from typing, e-mailing and making outside phone calls, which seriously impeded the plaintiff's ability to perform her job.

---

a defendant. Since the second amended complaint did not add any new claims against the Court of Common Pleas or Christine Weller, we issued a Text Order dated November 8, 2011, apprising the parties that we would address the pending motions to dismiss the amended complaint.

On or about September 17, 2008, the plaintiff requested a leave of absence under the FMLA for personal medical health reasons in accordance with the County's policies and procedures. By letter dated October 3, 2008, the County's Human Resources Department informed the plaintiff that her request for FMLA leave was approved retroactively for the period of September 17, 2008 through October 10, 2008.

The plaintiff alleges that when she returned to work from FMLA leave on October 14, 2008, defendant Fisher had locked her out of her computer, assigned her work to a temporary employee, and requested that the plaintiff sign a document giving Fisher sole authority to discharge her; that at a meeting held on October 22, 2008, the plaintiff's other supervisor, Jury Commissioner Richard Zimmerman, asked her to resign, as he believed Judith Fischer's behavior toward her was having a detrimental effect on her health; and that while the plaintiff did not agree to resign, she offered to be transferred to other available positions within the County for which she was qualified.

On or about October 24, 2008, the plaintiff sought an extension of leave under the FMLA, requesting intermittent leave for doctor appointments and diagnostic testing related to anxiety, stress and issues related to her workers' compensation. On November 3, 2008, the County issued a letter from its Human Resources Department which informed the plaintiff that her request for intermittent FMLA leave was granted retroactively for the period from October 24, 2008 through December 25, 2008. On November 6, 2008, three days after granting the plaintiff FMLA leave, the County, through its Human Resources Department, issued her a letter which informed her that her position as a Jury Commission Assistant was terminated effective November 7, 2008.

Due to the defendants' alleged acts, the plaintiff has filed a four-count amended

complaint and second amended complaint against them.  The plaintiff asserts that all defendants violated Title I of the ADA (Count I) and willfully violated the FLMA (Count II).  The plaintiff also complains that the County, its Jury Selection Commission, and Judith L. Fisher violated the PHRA (Count III).[2]  As to defendant Fisher, the plaintiff claims that she aided and abetted a prohibited action under the PHRA (Count IV).   In her prayer for relief, the plaintiff seeks monetary damages, as well as injunctive relief in the form of reinstatement to her previous position or a comparable one, and other relief necessary to eradicate the defendants' alleged unlawful employment practices.  The Court's federal question and supplemental jurisdiction are invoked.

In response to the amended complaint, the Court of Common Pleas and Christine Weller moved to dismiss the claims against them pursuant to Fed.R.Civ.P. 12(b)(6).[3]  In reviewing a Rule 12(b)(6) motion to dismiss, the Court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC, 578 F.3d 203, 210-11 (3d Cir. 2009), citing Ashcroft v. Iqbal, – U.S. – , 129 S.Ct. 1937, 1949 (2009).  The court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Fowler, 578 F.3d at 211, quoting Iqbal, 129 S.Ct. at 1950.  To be "plausible', a complainant's factual allegations must "permit the court to infer more than the mere possibility of misconduct." Id.  That is, "a complaint must do more than allege the plaintiff's entitlement to relief"; it "has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211.

---

[2] In the amended complaint, the plaintiff alleged that all defendants violated the PHRA in Count III.  However, in the second amended complaint, only the County, its Jury Selection Commission, and Judith L.Fisher are said to have violated the PHRA.

[3] The other named defendants filed an answer to the amended complaint.

<u>Court of Common Pleas' motion to dismiss</u>:

In support of its motion to dismiss, the Court of Common Pleas argues it is immune from suit pursuant to the Eleventh Amendment of the United States Constitution. We agree.

It is well settled that states are immune from suits filed in federal court by virtue of the Eleventh Amendment. <u>Pennhurst State School & Hospital v. Halderman</u>, 465 U.S. 89, 104 (1984).[4] Eleventh Amendment immunity also extends to agencies, instrumentalities, or arms of the state. See, <u>Mt. Healthy City School Dist. Board of Educ. v. Doyle</u>, 429 U.S. 274 (1977).

There are exceptions to Eleventh Amendment immunity, such as when a state waives its immunity and consents to suit in federal court, or where Congress has specifically abrogated the state's Eleventh Amendment immunity in legislation or a particular statute. See, <u>College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.</u>, 527 U.S. 666, 670 (1999). No such exceptions to immunity are applicable here.

The Third Circuit Court of Appeals has explained that the Court of Common Pleas is an entity of the Unified Judicial System of Pennsylvania, and as such, it is an instrumentality of the Commonwealth. <u>Banks v. Court of Common Pleas FJD</u>, 342 Fed.Appx. 818, 820, 2009 WL 2488941 (3d Cir., Aug. 17, 2009).[5] In both <u>Banks</u>, <u>supra</u>, 342 Fed.Appx. at 820, and in <u>Benn v. First Judicial District</u>, 426 F.3d 233, 240-41 (3d Cir. 2005), the Court opined that state courts

---

[4] The Eleventh Amendment to the United States Constitution provides: "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign State." In <u>Edelman v. Jordan,</u> 415 U.S. 651, 662-663 (1974), the United States Supreme Court explained: "While [the Eleventh] Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State."

5 Indeed, the Pennsylvania Constitution, Article V, § 1 provides in pertinent part: "The judicial power of the Commonwealth shall be vested in a unified judicial system consisting of the Supreme Court, the Superior Court, the Commonwealth Court, courts of common pleas… [and] such other courts as may be provided by law… All courts … shall be in this unified judicial system."

which are part of Pennsylvania's unified judicial system are state entities immune from suit in federal court by virtue of the Eleventh Amendment. Accord, Haybarger v. Lawrence County Adult Probation and Parole, 551 F.3d 193, 198 (3d Cir. 2008).

In Banks, the Court counseled that "suits seeking money damages against the state [or its instrumentalities] for an alleged failure to comply with Title I of the ADA are barred by the Eleventh Amendment." 342 Fed.Appx. at 820-21, citing Bd. of Tr. of Univ. of Ala. v. Garrett, 531 U.S. 356 (2001). Likewise, in Benn, supra, the Court stated that "Pennsylvania, if sued under Title I [of the ADA], retains its Eleventh Amendment immunity." 426 F.3d at 239. Certainly, the Eleventh Amendment "protects an unconsenting state or state agency from a suit brought in federal court, *regardless of the relief sought.*" Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 185 (3d Cir. 2009) (emphasis added). Accordingly, the ADA claim against the Court of Common Pleas in Count I of the amended complaint will be dismissed.

With respect to the FLMA claim asserted against the Court of Common Pleas -- which is based on the Act's "self-care" provision -- it too should be dismissed. That is because in Banks, the Court opined that "private suits for damages may not be brought against states for alleged violations of the FLMA, which rise under the Act's self-care provision." 342 Fed.Appx. at 821, citing 29 U.S.C. § 2612(a)(1)(D). Also see, Chittister v. Dep't. of Cmty. and Econ. Dev., 226 F.3d 223, 226-27 (3d Cir. 2000), overruled in part by Nev. Dep't. of Human Res. v. Hibbs, 538 U.S. 721 (2003). Regarding Hibbs, the Third Circuit Court of Appeals stated in Banks: "Although the 'family-care' provisions of the FMLA were upheld by the Supreme Court in [Hibbs], private suits still may not be brought against states where the self-care provisions of the Act are implicated." 342 Fed.Appx. at 821. Accord, O'Donnell v. PA Dep't. of Corrections, 2011 WL 1871387, *6 (M.D.Pa., May 16, 2011) (explaining that while the Supreme Court in

6

Hibbs found that Congress had abrogated state sovereign immunity with respect to the family-care provisions of the FMLA, "courts interpreting Hibbs have been uniform in concluding that the central holding in Hibbs does not apply to the self-care provisions of the FMLA set forth in 29 U.S.C. § 2621(a)(1)(D)"), citing Banks, 342 Fed.Appx. at 821; Toeller v. Wisconsin Dep't. of Corrections, 461 F.3d 871, 878-79 (7th Cir. 2007); Touvell v. Ohio Dep't. of Mental Retardation & Developmental Disabilities, 422 F.3d 392, 400-01 (6th Cir. 2005); and Brockman v. Wyoming Dep't. of Family Servs., 342 F.3d 1159, 1164-65 (10th Cir. 2003). Thus, the FLMA claim in Count II will be dismissed against the Court of Common Pleas.

As noted above, the plaintiff alleged in Count III of the amended complaint that the Court of Common Pleas violated the PHRA. In the second amended complaint, however, the PHRA claim in Count III is no longer asserted against it. Presumably, that is because the plaintiff knows that Pennsylvania has retained its immunity against PHRA claims brought in federal court. See, Snyder v. Commonwealth of Pennsylvania, 2010 WL 4362440, *7 (M.D.Pa., Oct. 27, 2010), citing 42 Pa.C.S.A. § 8521(b).[6] Indeed, the plaintiff concedes that her PHRA claim against the Court of Common Pleas in Count III of the amended complaint is untenable.[7]

Based on the foregoing, the motion to dismiss filed by the Court of Common Pleas will be granted.

Christine Weller's motion to dismiss:

Defendant Weller moves to dismiss the claims asserted against her on several grounds. With respect to the ADA and FMLA claims in Counts I and II respectively, Weller argues that she is entitled to Eleventh Amendment immunity as to these claims in her official capacity.

---

[6] It is provided in 42 Pa.C.S.A. § 8521(b): "Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."

[7] See, plaintiff's response to the Court of Common Pleas' motion to dismiss [Doc. No. 24 at p. 13].

As previously discussed, the Eleventh Amendment bars suits against states and state instrumentalities which are brought pursuant to Title I of the ADA and the "self-care" provisions of the FMLA, as here. A similar suit for money damages asserted against a state employee acting in her official capacity is deemed to be a suit against the state, and hence, it too is barred by the Eleventh Amendment. See, Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989); accord, O'Donnell, supra, 2011 WL 1871387, at *11.

However, a claim for prospective injunctive relief against a state official acting in her official capacity may proceed under the federal statutes at issue. Koslow v. Commonwealth of PA, 302 F.3d 161, 178 (3d Cir. 2002). As explained in Koslow, "[t]he Eleventh Amendment has not been interpreted to bar a plaintiff's ability to seek prospective relief against state officials for violations of federal law." Id. That is because "official-capacity actions for prospective relief are not treated as actions against the State." Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985), citing Ex Parte Young, 209 U.S. 123 (1908).

Here, the plaintiff seeks prospective injunctive relief in the form of reinstatement and other affirmative relief necessary to eradicate the effect of the defendants' alleged unlawful employment practices. In Koslow, supra, our Court of Appeals stated that a "claim for reinstatement, with accommodations for [a] disability, is the type of injunctive, 'forward-looking' relief cognizable under Ex Parte Young." 302 F.3d at 179. Accordingly, by virtue of the Eleventh Amendment, the plaintiff's claim for money damages against defendant Weller in Counts I and II will be dismissed, but not her claim for prospective injunctive relief against Weller in her official capacity.

In hopes of dismissing the plaintiff's claim for prospective injunctive relief under the ADA in Count I, defendant Weller argues that the plaintiff failed to exhaust the required

administrative remedies under the statute. We agree.

Unlike the FMLA, the ADA requires pursuit of administrative remedies before a plaintiff may file a complaint in court. Churchill v. Star Enterprises, 183 F.3d 184, 190 (3d Cir. 1999). "Thus, a party who brings an employment discrimination claim under Title I of the ADA must follow the administrative procedures set forth in Title VII of the Civil Rights Act of 1964 ["Title VII"], 42 U.S.C. § 2000e-5." Id.

Under the procedural requirements of Title VII, a plaintiff must exhaust her administrative remedies by filing a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") before filing a lawsuit. Barzanty v. Verizon PA, 361 Fed.Appx. 411, 413 (3d Cir. 2010), citing 42 U.S.C. §§ 2000e-5(b), (e)(1), (f)(1). "The purpose of requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." Barzanty, supra, 361 Fed.Appx. at 413-14, citing Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996).

Generally, in a deferral state like Pennsylvania which has a work sharing agreement with the EEOC, where a charge of discrimination is filed with the EEOC and/or a parallel state agency (i.e., the Pennsylvania Human Relations Commission ["PHRC"]), the charge must be filed within 300 days from the date of the alleged unlawful employment practice. Burgh v. Borough Council of Montrose, 251 F.3d 465, 469 (3d Cir. 2001); Benn v. First Judicial District of PA, 2000 WL 1236201, *2 (E.D.Pa., April 26, 2000), aff'd, 426 F.3d 233 (3d Cir. 2005). Here however, the parties agree that the PHRC does not have jurisdiction over the plaintiff's claims against defendant Weller in her capacity as an employee of the Court of Common Pleas; and hence, the plaintiff had to file an EEOC charge within 180 days of the alleged unlawful employment practice. See, Benn, supra, 2000 WL 1236201, at *2, aff'd., 426 F.3d 233 (3d Cir.

2005). Also see, 29 C.F.R. § 1601.13(a)(2) ("Charges over which a [fair employment practices] agency has no subject matter jurisdiction are filed with the [EEOC] upon receipt and are timely if received by the Commission within 180 days from the date of the alleged violation.").

The plaintiff contends that on November 6, 2008, she was notified that her employment was being terminated effective November 7, 2008. Amended Complaint at ¶ 39. The plaintiff also avers that on or about August 17, 2009, she filed a charge of discrimination with the EEOC. Id. at ¶ 12. Clearly, the plaintiff's EEOC charge was not filed within 180 days of the alleged unlawful employment practice. It is significant, however, that on April 8, 2009, the plaintiff submitted an "intake questionnaire" to the EEOC which set forth her claims of disability discrimination and retaliation.[8] The intake questionnaire is stamped as having been received by the EEOC on April 10, 2009, which is within 180 days of the alleged unlawful employment practice. On April 14, 2009, the EEOC issued a "Notice of Charge of Discrimination", which apprised the Chief Executive Officer of the County Jury Commission of the plaintiff's charge.[9]

It does not appear that the plaintiff's aforesaid "intake questionnaire" was verified. EEOC regulations provide that a charge of discrimination must "be in writing and signed and shall be verified." 29 C.F.R. § 1601.9. To be "verified", the charge must be "sworn to or affirmed before a notary public ... or other person duly authorized by law to administer oaths [or] supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. §1601.3(a). Here, the plaintiff signed the intake questionnaire, but it was not "verified" pursuant to the above EEOC regulation.

---

[8] See, Exhibit A to the plaintiff's response to defendant Weller's motion to dismiss [Doc. No. 30-1]. Our review of this document does not convert the defendant's Rule 12(b)(6) motion to one for summary judgment, for "a [party] may supplement the complaint by adding exhibits such as public records and other indisputably authentic documents underlying the plaintiff's claims." Sentinel Trust Co. v. Universal Bonding Ins., 316 F.3d 213, 216 (3d Cir. 2003).

[9] See, Exhibit B to the plaintiff's response to defendant Weller's motion to dismiss [Doc. No. 30-2].

Importantly, EEOC regulations also provide:

> a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of. *A charge may be amended to cure technical defects or omissions, including the failure to verify the charge, or to clarify or amplify the allegations made therein. Such amendments ... will relate back to the date the charge was first received.*

29 C.F.R. § 1601.12(b) (Emphasis added).

In this case, the plaintiff filed her unverified intake questionnaire with the EEOC on April 8, 2009, complaining of disability discrimination and retaliation. On August 17, 2009, the plaintiff filed a verified charge of discrimination with the EEOC, re-asserting her claims.[10] We find that the plaintiff's verified EEOC charge relates back to her timely-filed intake questionnaire. While the intake questionnaire was not verified, the plaintiff's subsequent verified EEOC charge cured that technical defect. See, Waites v. Kirkbride Center, 2011 WL 2036689, *6 & n.5 (E.D.Pa., May 23, 2011) ("despite being filed after the [limitations] period, Plaintiff's formal charge was verified and relates back to the date the questionnaire was filed, which makes it timely"); accord Wood v. Kaplan Properties, Inc., 2009 WL 3230267, *5 (D.N.J., Sept. 29, 2009); Lester v. Mercy Hospital, 2006 WL 2434077, *2 (W.D.Pa., Aug. 18, 2006).

Nonetheless, it appears that the plaintiff failed to exhaust her administrative remedies as to the ADA claim in Count I with respect to defendant Weller. That is because the plaintiff did not name Weller in her EEOC filings. Indeed, nowhere in the intake questionnaire, nor the EEOC charge was Ms. Weller mentioned by name or alluded to in the alleged discrimination.

Ordinarily, an ADA or Title VII action may be brought only against a party previously named in an EEOC charge. See, Schafer v. Board of Public Education, 903 F.2d 243, 251 (3d

---

[10] See, Exhibit 1 to the plaintiff's sur-reply brief [Doc. No. 36-1].

Cir. 1990) (Title VII case); Carsetter v. Adams County Transit Authority, 2008 WL 4462121, *4 (M.D.Pa., Sept. 30, 2008) (ADA case). However, courts recognize an exception to this rule "when the unnamed party received notice [of the charge] and when there is a shared commonality of interest with the named party." Schafer, supra, 903 F.2d at 252; Carsetter, supra, 2008 WL 4462121, at *4; also see, Glus v. G.C. Murphy Co., 629 F.2d 248, 251 (3d Cir. 1980), vacated on other grounds, 451 U.S. 935 (1981).[11]

Here, it does not appear that the dual factors of notice and commonality of interest are present as to defendant Weller. Concerning notice, the plaintiff's intake questionnaire specifies that the persons responsible for discriminating against her are Jury Commissioners Judith Fisher and Richard Zimmerman. Weller is neither mentioned, nor named in the questionnaire.

Similarly, the EEOC charge fails to name or mention Ms. Weller. The plaintiff's EEOC charge specifies that on October 22, 2008, she met with Deputy Court Administrator Tim McCullough and Jury Commissioner Richard Zimmerman, at the request of Mr. Zimmerman; that during that meeting, Mr. Zimmerman asked the plaintiff to resign, as he could see that defendant Fisher's behavior was having an adverse impact on the plaintiff's health; and that on October 30, 2008, the plaintiff met with the County Commissioners to discuss her complaints about Ms. Fisher, whereupon they agreed to speak to the President Judge about it.

In both her intake questionnaire and her EEOC charge of discrimination, the plaintiff named the County and/or its Jury Commission as a respondent. Under Pennsylvania statute, the composition of a jury selection commission is set forth as follows:

---

[11] In Glus, supra, the Court listed four factors to be considered in determining whether a district court has jurisdiction over an unnamed party: (1) whether the role of the unnamed party could have been reasonably ascertained by the complainant at the time he filed his administrative charge; (2) whether the interests of a named party are so similar to the unnamed party that for purposes of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party as a respondent to the complaint; (3) whether its failure to be named in the administrative proceedings resulted in actual prejudice to the unnamed party; and (4) whether the unnamed party represented to the complainant that its relationship with the complainant was through the named party. 629 F.2d at 251. These factors are to be "liberally construed", and no one factor is decisive. Id.

> **(a) General rule.** – Except in the first judicial district and other home rule charter counties, the jury selection commission shall consist of two jury commissioners elected as provided in this section and the president judge of the court of common pleas of the judicial district embracing the county. The president judge may from time to time assign another judge of court to perform his duties temporarily. The president judge or his assigned replacement shall be chairman.

42 Pa.C.S.A. § 2122(a).

As discussed above, on April 14, 2009 (shortly after the plaintiff submitted her intake questionnaire to the EEOC), the EEOC issued a "Notice of Charge of Discrimination" to the Chief Executive Officer of the County Jury Commission, apprising her of the plaintiff's charge. Presumably, that notice of the plaintiff's charge was issued to the President Judge of the County Court of Common Pleas, who is chairperson of the jury commission pursuant to 42 Pa.C.S.A. § 2122(a).[12] While the County Jury Commissioners, including the President Judge of the County Court of Common Pleas, should have had notice of the administrative charge, nothing in the record indicates that Ms. Weller had notice of it. Having failed to name or mention Weller in her EEOC filings, the plaintiff does not claim that Weller's identity was unknown to her at the time.

Even assuming, arguendo, that Weller had notice of the plaintiff's charge, there is not a sufficient commonality of interest between the named parties in the EEOC filings and Weller that it was unnecessary to include Weller as a respondent in the charges. The interests of the named County, its Jury Commission, and its Jury Commissioners -- whether named as the plaintiff's former employer, or persons who discriminated against her -- are not so similar to those of Weller, who is not alleged to have been involved in any misconduct, that for purposes of obtaining voluntary conciliation and compliance it would be unnecessary to include Weller in the EEOC proceedings.

---

[12] As previously mentioned, Judge Debbie O'Dell Seneca, in her official capacity as President Judge of the County Court of Common Pleas, was named a defendant in the second amended complaint.

As previously mentioned, the purpose of requiring exhaustion of administrative remedies is to afford the EEOC the opportunity to settle disputes through conference and conciliation, so as to avoid unnecessary court action. Barzanty, 361 Fed.Appx. at 413-14 (citation omitted). As to Ms. Weller, the plaintiff's failure to mention her by name or allude to her in the EEOC charges frustrated these purposes. Thus, we find that the plaintiff failed to exhaust the required administrative remedies under the ADA as to defendant Weller. As such, Weller's motion to dismiss Count I will be granted.

Count III of the amended complaint, which purports to state a claim for violation of the PHRA, will be dismissed against Ms. Weller in her official capacity as Court Administrator of the County Court of Common Pleas. As discussed above, Pennsylvania has retained its immunity against PHRA claims brought in federal court. Snyder, supra, 2010 WL 4362440, at *7, citing 42 Pa.C.S.A. § 8521(b). The plaintiff also concedes that her PHRA claim against defendant Weller lacks merit.[13]

An appropriate Order will be entered.

---

[13] See, plaintiff's response to defendant Weller's motion to dismiss [Doc. No. 30 at p. 15].

O R D E R

AND NOW, this 8th day of December, 2011, for the reasons set forth in the Court's Memorandum Opinion filed this date,

IT IS ORDERED that the motion to dismiss the amended complaint filed by the Court of Common Pleas (Document No. 20) is granted.

IT IS ALSO ORDERED that the motion to dismiss the amended complaint filed by Christine Weller (Document No. 27) is granted as to Counts I and III and as to the plaintiff's claim for money damages in Count II, but denied as to the plaintiff's claim for prospective injunctive relief in Count II.

IT IS FURTHER ORDERED that in light of these rulings, and as the second amended complaint does not add any new claims against the Court of Common Pleas or Christine Weller, that all claims in the second amended complaint against the Court of Common Pleas are dismissed, and that all claims against Christine Weller in the second amended complaint are dismissed, except for the plaintiff's claim for prospective injunctive relief in Count II.

s/ROBERT C. MITCHELL<br>United States Magistrate Judge