IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBORAH L. HARTER,<br>Plaintiff, | )<br>)<br>) |
| vs | ) Civil Action No. 11-588 |
| COUNTY OF WASHINGTON, WASHINGTON COUNTY JURY SELECTION COMMISSION, JUDITH L. FISHER, JURY COMMISSIONER, WASHINGTON COUNTY COURT OF COMMON PLEAS, CHRISTINE L. WELLER, in her official capacity as Court Administrator of the Washington County Court of Common Pleas, and JUDGE DEBBIE O'DELL SENECA, in her official capacity as the President Judge of the Washington County Court of Common Pleas,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

MITCHELL, Magistrate Judge:

Presently before the Court is a motion to dismiss the second amended complaint filed by defendant Judge Debbie O'Dell Seneca, in her official capacity as the President Judge of the Washington County Court of Common Pleas (the "Court of Common Pleas"). For reasons discussed below, Judge O'Dell Seneca's motion to dismiss (Document No. 42) will be granted as to Count III and as to the plaintiff's claim for money damages in Counts I and II, but denied as to the plaintiff's claim for prospective injunctive relief in Counts I and II.

On November 7, 2011, the plaintiff, Deborah L. Harter, filed a second amended complaint against defendants County of Washington (the "County"), its Jury Selection Commission, Judith L. Fisher, one of its Jury Commissioners, its Court of Common Pleas,

1

Christine L. Weller, in her official capacity as Court Administrator of the Court of Common Pleas, and Judge Debbie O'Dell Seneca, in her official capacity as the President Judge of the Court of Common Pleas.

The plaintiff complains that the County and/or the Court of Common Pleas unlawfully terminated her employment as a Jury Commission Assistant, and in conjunction with her discharge, the defendants violated Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.C.S.A. §§ 955, et seq.

The plaintiff contends that from May, 2000 until on or about November 5, 2008, she was employed on a full-time basis by the County and/or the Court of Common Pleas as a Jury Commission Assistant; that throughout her employment, she received exemplary reviews and was never subjected to any discipline; that on or about June 20, 2008, she was injured at work, which required her to schedule periodic medical treatment, and she made a claim for workers' compensation related to her injury; that one of her supervisors, Jury Commissioner Judith L. Fisher, disapproved of her having to miss work to undergo medical treatment, and in July, 2008, Fisher began harassing her on an almost daily basis by threatening to discharge her; that Fisher perceived the plaintiff to be disabled due to her having to schedule time off from work for health reasons; and that on or about September 16, 2008, Fisher forbade her from typing, e-mailing and making outside phone calls, which seriously impeded the plaintiff's ability to perform her job. According to the plaintiff, Judge O'Dell Seneca had management and supervisory authority over court personnel and was the Chairperson of the County Jury Selection Commission.

On or about September 17, 2008, the plaintiff requested a leave of absence under the FMLA for personal medical health reasons in accordance with the County's policies and

2

procedures. By letter dated October 3, 2008, the County's Human Resources Department informed the plaintiff that her request for FMLA leave was approved retroactively for the period of September 17, 2008 through October 10, 2008.

The plaintiff alleges that when she returned to work from FMLA leave on October 14, 2008, defendant Fisher had locked her out of her computer, assigned her work to a temporary employee, and requested that the plaintiff sign a document giving Fisher sole authority to discharge her; that at a meeting held on October 22, 2008, the plaintiff's other supervisor, Jury Commissioner Richard Zimmerman, asked her to resign, as he believed Judith Fischer's behavior toward her was having a detrimental effect on her health; and that while the plaintiff did not agree to resign, she offered to be transferred to other available positions within the County for which she was qualified.

On or about October 24, 2008, the plaintiff sought an extension of leave under the FMLA, requesting intermittent leave for doctor appointments and diagnostic testing related to anxiety, stress and issues related to her workers' compensation. On November 3, 2008, the County issued a letter from its Human Resources Department which informed the plaintiff that her request for intermittent FMLA leave was granted retroactively for the period from October 24, 2008 through December 25, 2008. On November 6, 2008, three days after granting the plaintiff FMLA leave, the County, through its Human Resources Department, issued her a letter which informed her that her position as a Jury Commission Assistant was terminated effective November 7, 2008.

Due to the defendants' alleged acts, the plaintiff has filed a four-count second amended complaint against them. The plaintiff asserts that all defendants violated Title I of the ADA (Count I) and willfully violated the FLMA (Count II). The plaintiff also complains that the

County, its Jury Selection Commission, and Judith L. Fisher violated the PHRA (Count III). As to defendant Fisher, the plaintiff claims that she aided and abetted a prohibited action under the PHRA (Count IV). In her prayer for relief, the plaintiff seeks monetary damages, as well as injunctive relief in the form of reinstatement to her previous position or a comparable one, and other relief necessary to eradicate the defendants' alleged unlawful employment practices. The Court's federal question and supplemental jurisdiction are invoked.

In response to the second amended complaint, Judge O'Dell Seneca has moved to dismiss the claims against her pursuant to Fed.R.Civ.P. 12(b)(6). In reviewing a Rule 12(b)(6) motion to dismiss, the Court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC, 578 F.3d 203, 210-11 (3d Cir. 2009), citing Ashcroft v. Iqbal, – U.S. – , 129 S.Ct. 1937, 1949 (2009). The court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Fowler, 578 F.3d at 211, quoting Iqbal, 129 S.Ct. at 1950. To be "plausible', a complainant's factual allegations must "permit the court to infer more than the mere possibility of misconduct." Id. That is, "a complaint must do more than allege the plaintiff's entitlement to relief"; it "has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211.

Judge O'Dell Seneca's motion to dismiss:

Judge O'Dell Seneca moves to dismiss the claims asserted against her on several grounds. First, she argues that the second amended complaint fails to state a plausible claim for relief against her. We agree that the PHRA claim asserted against her in her official capacity in Count III fails to state a plausible claim. That is because Pennsylvania has retained its immunity against PHRA claims brought in federal court. See, Snyder v. Commonwealth of Pennsylvania,

4

2010 WL 4362440, *7 (M.D.Pa., Oct. 27, 2010), citing 42 Pa.C.S.A. § 8521(b).[1] Indeed, the plaintiff concedes that her PHRA claim against Judge O'Dell Seneca is untenable.[2] Thus, Count III of second the amended complaint, which purports to state a claim for violation of the PHRA, will be dismissed against Judge O'Dell Seneca in her official capacity as President Judge of the Court of Common Pleas.

With respect to the ADA and FMLA claims in Counts I and II respectively, the plaintiff has stated plausible claims for relief as discussed below. As to these claims, Judge O'Dell Seneca asserts that she is entitled to Eleventh Amendment immunity in her official capacity.

It is well settled that states are immune from suits filed in federal court by virtue of the Eleventh Amendment. Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 104 (1984).[3] Eleventh Amendment immunity also extends to agencies, instrumentalities, or arms of the state. See, Mt. Healthy City School Dist. Board of Educ. v. Doyle, 429 U.S. 274 (1977).

There are exceptions to Eleventh Amendment immunity, such as when a state waives its immunity and consents to suit in federal court, or where Congress has specifically abrogated the state's Eleventh Amendment immunity in legislation or a particular statute. See, College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999). No such exceptions to immunity are applicable here.

The Third Circuit Court of Appeals has explained that the Court of Common Pleas is an

---

[1] It is provided in 42 Pa.C.S.A. § 8521(b): "Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."

[2] See, plaintiff's response to Judge O'Dell Seneca's motion to dismiss [Doc. No. 50 at p. 15].

[3] The Eleventh Amendment to the United States Constitution provides: "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign State." In Edelman v. Jordan, 415 U.S. 651, 662-663 (1974), the United States Supreme Court explained: "While [the Eleventh] Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State."

entity of the Unified Judicial System of Pennsylvania, and as such, it is an instrumentality of the Commonwealth. Banks v. Court of Common Pleas FJD, 342 Fed.Appx. 818, 820, 2009 WL 2488941 (3d Cir., Aug. 17, 2009).[4] In both Banks, supra, 342 Fed.Appx. at 820, and in Benn v. First Judicial District, 426 F.3d 233, 240-41 (3d Cir. 2005), the Court opined that state courts which are part of Pennsylvania's unified judicial system are state entities immune from suit in federal court by virtue of the Eleventh Amendment. Accord, Haybarger v. Lawrence County Adult Probation and Parole, 551 F.3d 193, 198 (3d Cir. 2008).

In Banks, the Court counseled that "suits seeking money damages against the state [or its instrumentalities] for an alleged failure to comply with Title I of the ADA are barred by the Eleventh Amendment." 342 Fed.Appx. at 820-21, citing Bd. of Tr. of Univ. of Ala. v. Garrett, 531 U.S. 356 (2001). Likewise, in Benn, supra, the Court stated that "Pennsylvania, if sued under Title I [of the ADA], retains its Eleventh Amendment immunity." 426 F.3d at 239.

With respect to the FMLA claim for money damages asserted against Judge O'Dell Seneca -- which is based on the Act's "self-care" provision -- it too should be dismissed. That is because "suits against States under [the self-care provision of the FMLA] are barred by the States' immunity as sovereigns". Coleman v. Court of Appeals of Maryland, -- S.Ct. --, 2012 WL 912951, *3 (U.S., Mar. 20, 2012). In Coleman, the Supreme Court explained that the "self-care provision [of the FMLA] is not a valid abrogation of [a] State's immunity from suit." Id. at *6. A similar suit for money damages asserted against a state employee acting in her official capacity is deemed to be a suit against the state, and hence, it too is barred by the Eleventh Amendment. See, Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).

---

4 Indeed, the Pennsylvania Constitution, Article V, § 1 provides in pertinent part: "The judicial power of the Commonwealth shall be vested in a unified judicial system consisting of the Supreme Court, the Superior Court, the Commonwealth Court, courts of common pleas… [and] such other courts as may be provided by law… All courts … shall be in this unified judicial system."

6

However, a claim for prospective injunctive relief against a state official acting in her official capacity may proceed under the federal statutes at issue. Koslow v. Commonwealth of PA, 302 F.3d 161, 178 (3d Cir. 2002). As explained in Koslow, "[t]he Eleventh Amendment has not been interpreted to bar a plaintiff's ability to seek prospective relief against state officials for violations of federal law." Id. That is because "official-capacity actions for prospective relief are not treated as actions against the State." Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985), citing Ex Parte Young, 209 U.S. 123 (1908).

Here, the plaintiff seeks prospective injunctive relief in the form of reinstatement and other affirmative relief necessary to eradicate the effect of the defendants' alleged unlawful employment practices. In Koslow, supra, our Court of Appeals stated that a "claim for reinstatement, with accommodations for [a] disability, is the type of injunctive, 'forward-looking' relief cognizable under Ex Parte Young." 302 F.3d at 179. Accordingly, by virtue of the Eleventh Amendment, the plaintiff's claim for money damages against Judge O'Dell Seneca in Counts I and II will be dismissed, but not her claim for prospective injunctive relief against the defendant in her official capacity.

In hopes of dismissing the plaintiff's claim for prospective injunctive relief under the ADA in Count I, Judge O'Dell Seneca argues that the plaintiff failed to exhaust the required administrative remedies under the statute. We diagree.

Unlike the FMLA, the ADA requires pursuit of administrative remedies before a plaintiff may file a complaint in court. Churchill v. Star Enterprises, 183 F.3d 184, 190 (3d Cir. 1999). "Thus, a party who brings an employment discrimination claim under Title I of the ADA must follow the administrative procedures set forth in Title VII of the Civil Rights Act of 1964 ["Title VII"], 42 U.S.C. § 2000e-5." Id.

7

Under the procedural requirements of Title VII, a plaintiff must exhaust her administrative remedies by filing a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") before filing a lawsuit. Barzanty v. Verizon PA, 361 Fed.Appx. 411, 413 (3d Cir. 2010), citing 42 U.S.C. §§ 2000e-5(b), (e)(1), (f)(1). "The purpose of requiring exhaustion is to afford the EEOC the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." Barzanty, supra, 361 Fed.Appx. at 413-14, citing Antol v. Perry, 82 F.3d 1291, 1296 (3d Cir. 1996).

Generally, in a deferral state like Pennsylvania which has a work sharing agreement with the EEOC, where a charge of discrimination is filed with the EEOC and/or a parallel state agency (i.e., the Pennsylvania Human Relations Commission ["PHRC"]), the charge must be filed within 300 days from the date of the alleged unlawful employment practice. Burgh v. Borough Council of Montrose, 251 F.3d 465, 469 (3d Cir. 2001); Benn v. First Judicial District of PA, 2000 WL 1236201, *2 (E.D.Pa., April 26, 2000), aff'd, 426 F.3d 233 (3d Cir. 2005). Here however, the PHRC does not have jurisdiction over the plaintiff's claims against Judge O'Dell Seneca in her capacity as an employee of the Court of Common Pleas; and hence, the plaintiff had to file an EEOC charge within 180 days of the alleged unlawful employment practice. See, Benn, supra, 2000 WL 1236201, at *2, aff'd., 426 F.3d 233 (3d Cir. 2005). Also see, 29 C.F.R. § 1601.13(a)(2) ("Charges over which a [fair employment practices] agency has no subject matter jurisdiction are filed with the [EEOC] upon receipt and are timely if received by the Commission within 180 days from the date of the alleged violation.").

The plaintiff contends that on November 6, 2008, she was notified that her employment was being terminated effective November 7, 2008. Second Amended Complaint at ¶ 40. The plaintiff also avers that on or about August 17, 2009, she filed a charge of discrimination with

8

the EEOC. Id. at ¶ 13. Clearly, the plaintiff's EEOC charge was not filed within 180 days of the alleged unlawful employment practice. It is significant, however, that on April 8, 2009, the plaintiff submitted an "intake questionnaire" to the EEOC which set forth her claims of disability discrimination and retaliation.[5] The intake questionnaire is stamped as having been received by the EEOC on April 10, 2009, which is within 180 days of the alleged unlawful employment practice. On April 14, 2009, the EEOC issued a "Notice of Charge of Discrimination", which apprised the Chief Executive Officer of the County Jury Commission of the plaintiff's charge.[6]

It does not appear that the plaintiff's aforesaid "intake questionnaire" was verified. EEOC regulations provide that a charge of discrimination must "be in writing and signed and shall be verified." 29 C.F.R. § 1601.9. To be "verified", the charge must be "sworn to or affirmed before a notary public ... or other person duly authorized by law to administer oaths [or] supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. §1601.3(a). Here, the plaintiff signed the intake questionnaire, but it was not "verified" pursuant to the above EEOC regulation.

Importantly, EEOC regulations also provide:

a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of. *A charge may be amended to cure technical defects or omissions, including the failure to verify the charge, or to clarify or amplify the allegations made therein. Such amendments ... will relate back to the date the charge was first received.*

---

[5] See, Exhibit A to the plaintiff's response to Judge O'Dell Seneca's motion to dismiss [Doc. No. 50-1]. Our review of this document does not convert the defendant's Rule 12(b)(6) motion to one for summary judgment, for "a [party] may supplement the complaint by adding exhibits such as public records and other indisputedly authentic documents underlying the plaintiff's claims." Sentinel Trust Co. v. Universal Bonding Ins., 316 F.3d 213, 216 (3d Cir. 2003).

[6] See, Exhibit B to the plaintiff's response to Judge O'Dell Seneca's motion to dismiss [Doc. No. 50-2].

29 C.F.R. § 1601.12(b) (Emphasis added).

In this case, the plaintiff filed her unverified intake questionnaire with the EEOC on April 8, 2009, complaining of disability discrimination and retaliation. On August 17, 2009, the plaintiff filed a verified charge of discrimination with the EEOC, re-asserting her claims.[7] We find that the plaintiff's verified EEOC charge relates back to her timely-filed intake questionnaire. While the intake questionnaire was not verified, the plaintiff's subsequent verified EEOC charge cured that technical defect. See, Waites v. Kirkbride Center, 2011 WL 2036689, *6 & n.5 (E.D.Pa., May 23, 2011) ("despite being filed after the [limitations] period, Plaintiff's formal charge was verified and relates back to the date the questionnaire was filed, which makes it timely"); accord Wood v. Kaplan Properties, Inc., 2009 WL 3230267, *5 (D.N.J., Sept. 29, 2009); Lester v. Mercy Hospital, 2006 WL 2434077, *2 (W.D.Pa., Aug. 18, 2006).

Still, Judge O'Dell Seneca argues that the plaintiff failed to exhaust her administrative remedies as to the ADA claim in Count I, because the plaintiff did not name her in her EEOC filings. Ordinarily, an ADA or Title VII action may be brought only against a party previously named in an EEOC charge. See, Schafer v. Board of Public Education, 903 F.2d 243, 251 (3d Cir. 1990) (Title VII case); Carsetter v. Adams County Transit Authority, 2008 WL 4462121, *4 (M.D.Pa., Sept. 30, 2008) (ADA case). However, courts recognize an exception to this rule "when the unnamed party received notice [of the charge] and when there is a shared commonality of interest with the named party." Schafer, supra, 903 F.2d at 252; Carsetter, supra, 2008 WL 4462121, at *4; also see, Glus v. G.C. Murphy Co., 629 F.2d 248, 251 (3d Cir. 1980), vacated on other grounds, 451 U.S. 935 (1981).

Here, it appears that the dual factors of notice and commonality of interest are present as

---
[7] See, Exhibit C to the plaintiff's response to Judge O'Dell Seneca's motion to dismiss [Doc. No. 50-3].

10

to Judge O'Dell Seneca. The plaintiff's EEOC charge specifies that on October 22, 2008, she met with Deputy Court Administrator Tim McCullough and Jury Commissioner Richard Zimmerman, at the request of Mr. Zimmerman; that during that meeting, Mr. Zimmerman asked the plaintiff to resign, as he could see that defendant Fisher's behavior was having an adverse impact on the plaintiff's health; and that on October 30, 2008, the plaintiff met with the County Commissioners to discuss her complaints about Ms. Fisher, whereupon they agreed to speak to the President Judge about it.

In both her intake questionnaire and her EEOC charge of discrimination, the plaintiff named the County and/or its Jury Commission as a respondent. Under Pennsylvania statute, the composition of a jury selection commission is set forth as follows:

> **(a) General rule.** – Except in the first judicial district and other home rule charter counties, the jury selection commission shall consist of two jury commissioners elected as provided in this section and the president judge of the court of common pleas of the judicial district embracing the county. The president judge may from time to time assign another judge of court to perform his duties temporarily. The president judge or his assigned replacement shall be chairman.

42 Pa.C.S.A. § 2122(a).

As discussed above, on April 14, 2009 (shortly after the plaintiff submitted her intake questionnaire to the EEOC), the EEOC issued a "Notice of Charge of Discrimination" to the Chief Executive Officer of the County Jury Commission, apprising her of the plaintiff's charge. Presumably, that notice of the plaintiff's charge was issued to Judge O'Dell Seneca, the President Judge of the Court of Common Pleas, who is chairperson of the jury commission pursuant to 42 Pa.C.S.A. § 2122(a). Thus, the County Jury Commissioners, including the President Judge of the County Court of Common Pleas, should have had notice of the administrative charge.

11

Further, in her role as President Judge of the Court of Common Pleas, there is a sufficient commonality of interest between Judge O'Dell Seneca and the named parties in the EEOC filings that it was unnecessary to include her as a respondent in the charges. Thus, we find that the plaintiff exhausted the required administrative remedies under the ADA as to defendant Judge O'Dell Seneca. As such, the defendant's motion to dismiss Count I will be granted as to the plaintiff's claim for money damages, but denied as to the plaintiff's claim for prospective injunctive relief.

An appropriate Order will be entered.

O R D E R

AND NOW, this 27th day of March, 2012, for the reasons set forth in the Court's Memorandum Opinion filed this date,

IT IS ORDERED that the motion to dismiss the second amended complaint filed by defendant Judge Debbie O'Dell Seneca (Document No. 42) is granted as to Count III and as to the plaintiff's claim for money damages in Counts I and II, but denied as to the plaintiff's claim for prospective injunctive relief in Counts I and II.

s/ROBERT C. MITCHELL<br>
United States Magistrate Judge